NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

17-P-985                                        Appeals Court

JOHN DOE, SEX OFFENDER REGISTRY BOARD NO. 474362, & another[1]  vs.
        SEX OFFENDER REGISTRY BOARD & others.[2]


No. 17-P-985.

Essex.      April 10, 2018. - September 19, 2018.

Present:  Green, C.J., Desmond, & Englander, JJ.


Sex Offender Registration and Community Notification Act.
        Constitutional Law, Sex offender, Privacy.  Due Process of
        Law, Sex offender, Substantive rights, Class action.
        Internet.  Immunity from Suit.  Declaratory Relief.
        Damages, Privacy.  Practice, Civil, Sex offender, Class
        action, Declaratory proceeding, Injunctive relief, Motion
        to dismiss, Moot case.  Moot Question.



        Civil action commenced in the Supreme Judicial Court for
the county of Suffolk on September 10, 2015.

        After transfer to the Superior Court Department, a motion
to dismiss was heard by Peter M. Lauriat, J.

------------------------

        [1] John Doe, Sex Offender Registry Board No. 106929,
individually and on behalf of all others similarly situated.

        [2] Kevin Hayden, individually and in his capacity as chair of
the Sex Offender Registry Board, and Laurie Myers, individually
and in her capacity as executive director of the Sex Offender
Registry Board.

Carrie Benedon, Assistant Attorney General, for the defendants.
Kate A. Frame for the plaintiffs.

ENGLANDER, J.  The plaintiffs filed this action in 2015 challenging a now-discontinued practice of the Sex Offender Registry Board (SORB or board), under which SORB published the criminal history and identifying information of adjudicated sex offenders who no longer lived in Massachusetts.  Pursuant to this practice the plaintiffs' information was displayed on a page of SORB's official Web site, under the heading "moved out of state."  The plaintiffs' claims are brought against SORB and two of its officers, alleging violations of Federal and State constitutional due process rights, as well as other violations of State law.  This interlocutory appeal comes before us from the denial of a motion to dismiss that raised a variety of issues -- including, in particular, the propriety of claims for damages brought against the two SORB officers in their individual capacities.  Because the Federal and State constitutional claims for damages against the officers fail as a matter of law, we reverse that portion of the Superior Court order denying the motion to dismiss, and affirm the remainder.

Background.  As this is an appeal from a ruling under Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974), we take the well-pleaded facts from the plaintiffs' "amended complaint for

declaratory and injunctive relief and for damages" (amended complaint).  See Golchin v. Liberty Mut. Ins. Co., 460 Mass. 222, 223 (2011).

The structure of the sex offender registration statute has been frequently described.  See, e.g., Moe v. Sex Offender Registry Bd., 467 Mass. 598, 600-603 (2014).  The statute requires a sex offender to provide certain personal information, including name and current address, to the board.  G. L. c. 6, § 178E.  The board classifies sex offenders within a system of three different levels based on risk of reoffense and degree of dangerousness to the public.  G. L. c. 6, § 178K.  A sex offender's registration level has consequences for public access to that offender's information.  Level one offenders are entitled to greater information privacy.  See G. L. c. 6, § 178D.  Level two and three sex offenders, by contrast, have their information published in an online database available to the public.  See id.  "Sex offender" is a defined term, and for present purposes it is relevant that it is defined to encompass persons who live, work, or attend school in Massachusetts.  See G. L. c. 6, § 178C.

On or around June of 2015, SORB began the practice of publishing the sex offense history and other identifying information of sex offenders who had previously been registered but who were no longer living, working, or attending school in

Massachusetts. The information was posted on SORB's Web site under the category entitled "moved out of state." The practice was initiated without any notification of the reposting to the affected individuals -- there were more than 600 such persons. The information published included photographs and criminal histories. SORB did not verify that the information was current or accurate before posting it -- and some of the information allegedly was inaccurate.

The plaintiffs sued on their own behalf and on behalf of a purported class. The allegations with respect to plaintiff John Doe, Sex Offender Registry Board No. 106929 (Doe No. 106929), well-illustrate why the plaintiffs were concerned:[3] Doe No. 106929 came to Massachusetts in 2005 to attend school. He had previously been convicted in California for engaging in sexual relations with a sixteen year old when he was nineteen years old; California's age of consent was eighteen. After learning that Massachusetts had preliminarily classified him as a level three offender, Doe No. 106929 immediately left Massachusetts, and SORB ceased publishing his photograph and criminal history.

Ten years later, in June of 2015, Doe No. 106929 learned through an Internet conversation that SORB had resumed publishing his name and photograph -- this time on its "moved

---

[3] The amended complaint contains allegations regarding another plaintiff (and proposed class representative) as well.

out of state" page.  The sex offense listed on the page was "rape of a child."  Doe No. 106929 received no notice from SORB regarding SORB's new practice, or that his name was being republished on SORB's Web site.  Moreover, after Doe No. 106929 left Massachusetts, a court in California had entered an order expunging the record of his sex offense.  Doe No. 106929 lost two jobs in California in 2015 once this information was made known at his workplaces.

The original complaint was filed on September 10, 2015.  After some initial skirmishes, SORB took down the "moved out of state" portion of its Web site on or about September 29, 2015.  Sometime later the plaintiffs filed an amended complaint which, for the first time, sought damages.

The amended complaint contains nine counts.  Described generally, it includes counts for violations of both procedural and substantive due process, under both the State and Federal Constitutions.  It also contains a separate count under 42 U.S.C. § 1983 (2012), the Federal statute that provides remedies for deprivations of Federal constitutional rights by State actors.  The thrust of these due process claims is that the publication of the plaintiffs' identifying and criminal information constituted an impairment of their fundamental liberty and privacy interests, and was done without notice or an opportunity to be heard, and in clear violation of the

Massachusetts sex offender registration laws.  In addition, the amended complaint alleges violations of various State laws, including the right to privacy.

The defendants are SORB, the State entity, as well as two officers of SORB, each of whom is sued in both their official and individual capacities.  Defendant Kevin Hayden was the chair of SORB when the complaint was filed; defendant Laurie Myers was its executive director.

The defendants eventually countered the amended complaint with the motion to dismiss at issue in this appeal.  The thrust of that motion is that the plaintiffs do not have a claim for <u>damages</u>, both because (1) SORB's Web site publication did not violate procedural or substantive due process rights, and (2) even if such a violation occurred, the individual defendants have immunity from a damages claim because the constitutional rights the defendants allegedly violated were not "clearly established."  <u>Harlow</u> v. <u>Fitzgerald</u>, 457 U.S. 800, 818 (1982). The motion to dismiss also argues that the requests for declaratory and injunctive relief are moot, because the allegedly offending portion of the Web site has been taken down. Notably, the motion is a partial motion that does not address several counts of the complaint -- for example, it does not touch at all on the privacy claim under Massachusetts law.

The Superior Court judge denied the motion.  He reasoned, in relevant part:

"The court is unpersuaded by the defendants' argument that the individual defendants could not have known that the dissemination of the plaintiffs' information would amount to a violation of [F]ederal law.  Given the numerous recent cases where Massachusetts courts have highlighted the due process, privacy, and liberty interests implicated by the [I]nternet dissemination of sex offenders' information to the public, the court is not convinced by the defendants' assertion that it would not have been clear to the individually named defendants that disseminating information of sex offenders who no longer have a duty to register in Massachusetts could amount to a violation of those individuals' constitutional rights."

The defendants appeal from the Superior Court judge's order, invoking our jurisdiction under the doctrine of present execution.[4]  For the reasons discussed below, we reverse in part and affirm in part.

_____

[4] The plaintiffs challenge the application of the doctrine of present execution.  Under one aspect of that doctrine, the government may immediately appeal an order denying a motion to dismiss where the motion was based on immunity from suit claimed by a State officer.  Brum v. Dartmouth, 428 Mass. 684, 688 (1999).  The plaintiffs claim, however, that the doctrine does not apply here because the defendants did not move to dismiss all the counts against them, and thus the case will go forward against the individual defendants regardless of the result on this appeal.

The plaintiffs' argument is at odds with Kent v. Commonwealth, 437 Mass. 312, 316-317 (2002).  Kent held that the doctrine of present execution allowed for an immediate right of appeal where, as here, the defendants have asserted immunity, even if the claimed immunity would not have disposed of the entire case.  Id. ("[T]he Commonwealth's right to interlocutory review of the denial of its motion to dismiss based on immunity is not dependent on whether allowance of the motion would

*Discussion.* 1. *The claims at issue.* Before diving into substance, we need to first clearly define what is before us. The motion to dismiss under appeal focused on those counts of the amended complaint that allege constitutional due process violations, but the motion did not distinguish between Federal and State constitutional rights.[5] The amended complaint, however, contains separate counts under both the Federal and Massachusetts Constitutions, for deprivations of both procedural and substantive due process. The distinction between claims under the Federal and State Constitutions is important: first, because under the case law the due process rights secured by the two Constitutions are not identical, and second, because the remedies available for violations of the two Constitutions may not be the same. Deprivations of Federal constitutional rights are remedied under § 1983, which includes, in appropriate circumstances, a damages remedy. In contrast, it is unclear whether damages are available for deprivations of State

_____

completely end the litigation"). The appeal, thus, is properly before us.

[5] The motion relied only on Federal law, but requested the dismissal of all constitutional claims. Moreover, the briefing in the Superior Court, as well as the judge's decision, sometimes mix the Federal and State case law together. At oral argument we asked for, and subsequently received, supplemental briefing on two issues: (1) whether there are differences between the Federal and State constitutional rights asserted, and (2) whether there is a damages remedy available for deprivations of the State constitutional rights asserted.

constitutional rights where, as here, the plaintiffs have not alleged a "threats, intimidation or coercion" claim under the Massachusetts Civil Rights Act, G. L. c. 12, §§ 11H, 11I.

The upshot of these differences between Federal and State law is that each of the plaintiffs' claims must be separately analyzed, paying attention not only to the substantive law but also to the remedies available, and to the applicable defenses and government immunities.[6]

2. <u>Procedural due process -- Federal Constitution</u>. The Fourteenth Amendment to the United States Constitution provides that no State shall "deprive any person of life, liberty, or property, without due process of law." The plaintiffs' procedural due process argument is that they were deprived of a "liberty" or "property" interest when SORB published their photographs and criminal histories, and that SORB did so without providing the fundamentals of due process -- notice and an opportunity to be heard. See <u>Mathews</u> v. <u>Eldridge</u>, 424 U.S. 319, 333 (1976) ("The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner'" [citation omitted]). The defendants counter that the plaintiffs <u>did</u> receive due process, because the plaintiffs received notice and an opportunity to be heard when

---

[6] The defendants' argument that the claims for declaratory and injunctive relief are moot is addressed at the end of this opinion.

they first were classified and registered, at a time when they were present in Massachusetts.  The defendants contend that because the plaintiffs received due process at the time of registration and classification, no further process was due before the plaintiffs' names and information were republished as "moved out of state."

The difficulty with the plaintiffs' Federal due process argument, however, comes at the threshold; the plaintiffs must first demonstrate a deprivation of a constitutionally protected liberty or property interest.  See González-Fuentes v. Molina, 607 F.3d 864, 886 (1st Cir. 2010), cert. denied sub nom. Feliciano v. Molina, 562 U.S. 1257 (2011) (first step in procedural due process analysis "asks whether there exists a liberty or property interest which has been interfered with by the State"); LaChance v. Commissioner of Correction, 463 Mass. 767, 773 (2012) (similar proposition).  Here the plaintiffs argue that the interests at stake are their reputations and their privacy -- they assert a right not to have their identifying information published, along with their criminal histories, by the Commonwealth.  The United States Supreme Court addressed a similar allegation in Paul v. Davis, 424 U.S. 693, 697 (1976), where police chiefs in Kentucky had published the plaintiff's name and photograph on a flyer, under the heading "Active Shoplifters."  The Supreme Court rejected the

plaintiff's procedural due process claim in Paul, ruling as a matter of law that the State-imposed injury to reputation at issue could not qualify as a deprivation of "liberty" or "property" unless the plaintiff could also show loss of "a right or status previously recognized by [S]tate law" -- such as, for example, loss of government employment. Id. at 711. The Court held that absent such an additional injury the plaintiff might have a claim under State defamation law, but he did not have a § 1983 claim for deprivation of his constitutional rights. See id. at 710-712.

The reasoning in Paul is the touchstone for analyzing the plaintiffs' Federal claims here, as it has been in other cases, discussed infra, that have addressed Federal procedural due process issues in connection with State sex offender notification laws. The plaintiffs complain of harms to their reputation and their privacy resulting from the publication of (in some instances false) information about their criminal histories. While the alleged harms, if proved, are no doubt very serious, under Paul they would not by themselves rise to the level of liberty or property interests protected by the Federal due process clause.[7,8] See Doe v. Attorney Gen., 426

---

[7] Under Paul the loss of a government job might qualify as a sufficient property interest, but the loss of private employment would not. See Paul, 424 U.S. at 706, 711; Cutshall v.

Mass. 136, 143 (1997) ("Under the Fourteenth Amendment a person's reputation is not a protected liberty or property interest unless the circumstances involve something more, such as a change in the person's rights or status protected by State law").

Given the posture of the appeal before us, we do not today decide whether the plaintiffs have stated a Federal due process claim. Whether or not the plaintiffs have stated such a claim, we are satisfied that the individual defendants, Hayden and Myers, have immunity from the § 1983 damages claim against them. This is because as employees of a State executive agency, Hayden and Myers are immune from suit under § 1983 unless their actions violated clearly established constitutional rights. See Harlow, 457 U.S. at 818-819; LaChance, 463 Mass. at 777.

There was no clearly established Federal due process right applicable to the plaintiffs' circumstances at the time of the posting in 2015. As the court stated in LaChance, "A right is only clearly established if, at the time of the alleged violation, 'the contours of the right allegedly violated [were]

---

Sundquist, 193 F.3d 466, 479 (6th Cir. 1999), cert. denied, 529 U.S. 1053 (2000).

[8] The word "liberty" in the due process clause also encompasses certain rights generally described as "privacy" rights. See Paul, 424 U.S. at 712-713. The Court in Paul separately rejected the argument that the reputational interests at stake qualified as fundamental "privacy" interests protected by the Federal due process clause. Id.

sufficiently definite so that a reasonable official would appreciate that the conduct in question was unlawful'" (citation omitted). LaChance, 463 Mass. at 777. See Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011). The plaintiffs can point to no case establishing such sufficiently definite contours to the Federal procedural due process right they assert, particularly in light of the long-standing interpretation of § 1983 in Paul.

Our conclusion is bolstered by several more recent decisions of Federal Courts of Appeals, which have refused to find violations of Federal due process in the specific context of State sex offender registry laws. In Cutshall v. Sundquist, 193 F.3d 466, 478-482 (6th Cir. 1999), cert. denied, 529 U.S. 1053 (2000), for example, the United States Court of Appeals for the Sixth Circuit rejected an argument that the public notification provisions of Tennessee's sex offender registry law violated procedural due process. The court relied on Paul to conclude that no fundamental liberty or privacy rights were violated by the notification provisions. Id. at 479-480, 482. See Doe v. Tandeske, 361 F.3d 594, 597 (9th Cir.), cert. denied, 543 U.S. 817 (2004) (no right "to be free from the registration and notification requirements" of Alaska's sex offender registry statute); A.A. v. New Jersey, 341 F.3d 206, 211-214 (3d Cir. 2003) (New Jersey's law providing for notification, including on Internet, of sex offender's home address does not violate

fundamental privacy rights).  But cf. E.B. v. Verniero, 119 F.3d 1077, 1105-1111 (3d Cir. 1997) (notification provisions of New Jersey's "Megan's Law" implicated liberty interests protected by Federal due process).

We do not find a contrary construction of Federal law in the decisions of the Supreme Judicial Court or this court. While many Massachusetts appellate decisions have addressed what procedural due process rights exist in connection with the Massachusetts sex offender registration and public notification laws, the cases that have found violations of procedural due process have been based on the Massachusetts Declaration of Rights, not on the Federal Constitution.  See the following representative chronology:  Doe, 426 Mass. at 144 (finding violation of procedural due process under Massachusetts Declaration of Rights; court "need not pass on the plaintiff's Federal procedural due process claim"); Doe v. Attorney Gen., 430 Mass. 155, 163 (1999) (finding violation of State procedural due process; stating, "We need not pass on Doe's Federal procedural due process claim"); Doe, Sex Offender Registry Bd. No. 8725 v. Sex Offender Registry Bd., 450 Mass. 780, 784-785 & n.9, 793 (2008) (finding violation of due process rights under Massachusetts Declaration of Rights without addressing Federal due process); Moe, 467 Mass. at 599, 615-616 (finding violation of due process rights under Massachusetts Declaration of Rights

without addressing Federal due process); Doe, Sex Offender
Registry Bd. No. 29481 v. Sex Offender Registry Bd., 84 Mass.
App. Ct. 537, 539-543 (2013) (finding due process violation
based on Massachusetts Declaration of Rights without addressing
Federal due process).[9]  Indeed, the decisions of our appellate
courts that discuss Paul in the context of the sex offender
registration law acknowledge that procedural due process rights
are more limited under Federal law.  See Doe, 426 Mass. at 143-
144; Opinion of the Justices, 423 Mass. 1201, 1229-1231 (1996).[10]

In sum, given the state of the Federal case law, set forth
above, we conclude that the Federal procedural due process
violation asserted by the plaintiffs was not clearly established
as of June, 2015.

---

[9] Recently, the Supreme Judicial Court decided two
additional procedural due process cases in this area, Doe, Sex
Offender Registry Bd. No. 76819 v. Sex Offender Registry Bd.,
480 Mass. 212 (2018), and Noe, Sex Offender Registry Bd. No.
5340 v. Sex Offender Registry Bd., 480 Mass. 195 (2018).  As
with the cases cited supra, we understand the holdings in these
cases also to be based upon the Massachusetts Declaration of
Rights.  In any event, these cases, as well as the case they
principally rely upon, Doe, Sex Offender Registry Bd. No. 380316
v. Sex Offender Registry Bd., 473 Mass. 297 (2015), all were
decided after the Web site section at issue was taken down in
September of 2015.

[10] As the Supreme Judicial Court noted in Doe, 426 Mass. at
144 n.8, there have been inconsistent statements in the case law
as to whether the due process protections of the Massachusetts
Constitution are identical to Federal protections.  As discussed
herein, however, it is clear that in connection with the
Massachusetts sex offender registration statute, the Federal and
State provisions have not been construed identically.

3. <u>Substantive due process -- Federal Constitution</u>. The plaintiffs' Federal substantive due process claim also fails to provide a basis for relief. As discussed above, there is an initial question whether the plaintiffs can meet the threshold requirement to show a deprivation of a Federal liberty or property interest here. But perhaps more saliently, Federal substantive due process claims of this type require a showing of government conduct that is so "egregious" that it "shocks the conscience." <u>Sacramento</u> v. <u>Lewis</u>, 523 U.S. 833, 846 (1998). In <u>Lewis</u>, for example, the United States Supreme Court rejected a substantive due process claim against a police officer who had engaged in a high speed chase of a suspect, where the chase was allegedly conducted with deliberate indifference to life, and where the chase resulted in the death of the plaintiff's decedent. <u>Id</u>. at 836-838, 854-855. The Court held as a matter of law that such conduct did not meet the "shocks the conscience" requirement for a substantive due process claim. <u>Id</u>. at 854. See <u>González-Fuentes</u>, 607 F.3d at 880-886 (reimprisonment of participants released on electronic supervision program does not rise to level of substantive due process violation); <u>J.R.</u> v. <u>Gloria</u>, 593 F.3d 73, 76, 79-80 (1st Cir. 2010) (finding physical and sexual abuse of foster children resulting from defendants' failure to act does not rise to level

of substantive due process violation, noting that deliberate indifference does not per se shock the conscience).

Lewis and the other Federal cases establish that there is no substantive due process claim here.  It is true that the allegations, if proved, arguably show a clear violation of Massachusetts law.  The Massachusetts statute defines a "sex offender" subject to registration and notification as a person who resides, works, or goes to school "in the [C]ommonwealth" (emphasis supplied) -- yet the plaintiffs here did not live, work, or go to school in Massachusetts when SORB republished their photographs and criminal histories.  G. L. c. 6, § 178C. Even assuming, however, that this was a clear violation of State law, the actions complained of do not approach the conduct that previously has been found to qualify as a Federal substantive due process violation.  Contrast Rochin v. California, 342 U.S. 165, 172 (1952) ("Illegally breaking into the privacy of the petitioner, [struggling] to open his mouth and remove what was there, [and forcing] extraction of his stomach's contents" violated due process clause of Fourteenth Amendment to the United States Constitution); McIntyre v. United States, 336 F. Supp. 2d 87, 109 (D. Mass. 2004) (finding purposeful disclosure of confidential informant, knowing that revealing information could result in informant's death, to be "conscience-shocking"). Certainly it was not clearly established, in 2015, that SORB's

decision to publish the plaintiffs' sex offender information violates Federal substantive due process.

Because as a matter of law the individual defendants did not violate any "clearly established" Federal due process rights, the damages claims against them under the Federal Constitution and § 1983 must be dismissed.[11]

4.   Procedural due process -- Massachusetts Constitution. As discussed above, unlike their Federal claim, the plaintiffs' procedural due process claim under the Massachusetts Declaration

---

[11] This conclusion leaves the status of the Federal claims as follows:

(1) The § 1983 claims for damages against the State officers in their individual capacities are dismissed, based upon their qualified immunity.

(2) The § 1983 claims against the State officers in their official capacities also must be dismissed, as State officers may not be sued for damages in their official capacities under § 1983.  Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989).  See O'Malley v. Sheriff of Worcester County, 415 Mass. 132, 141 (1993) ("Monetary damages against State officials are available only if they are sued in their individual or personal capacities under color of State law").

(3) The claims for declaratory and injunctive relief against the State officers, in both their official and individual capacities, remain.  See O'Malley, 415 Mass. at 141 ("If a State official is sued in his [or her] official capacity, then the plaintiffs' recovery is limited to equitable relief only").  See infra.

(4) The § 1983 claims against SORB must be dismissed.  SORB is not a proper defendant under § 1983, as it is a State entity, see G. L. c. 6, § 178K, and State entities may not be sued under § 1983.  See Will, 491 U.S. at 67, 70; Laubinger v. Department of Revenue, 41 Mass. App. Ct. 598, 601-602 (1996).

of Rights finds considerable support in the case law.  See <u>Doe, Sex Offender Registry Bd. No. 941</u> v. <u>Sex Offender Registry Bd</u>., 460 Mass. 336, 338 (2011), citing <u>Doe, Sex Offender Registry Bd. No. 972</u> v. <u>Sex Offender Registry Bd</u>., 428 Mass. 90, 100 (1998); <u>Coe</u> v. <u>Sex Offender Registry Bd</u>., 442 Mass. 250, 257-258 (2004). These Massachusetts cases make clear that under Massachusetts law the notification provisions of the sex offender registry statute do implicate fundamental liberty and privacy rights, thereby triggering due process protections.  See <u>Doe, Sex Offender Registry Bd. No. 941</u>, 460 Mass. at 338 ("'Sex offenders have a constitutionally protected liberty and privacy interest in avoiding registration and public dissemination of registration information' that arises from their classification, and therefore, they are entitled to procedural due process . . ." [citation omitted]); <u>Doe</u>, 426 Mass. at 143 ("The plaintiff [sex offender] has sufficient liberty and privacy interests constitutionally protected by art. 12 that he is entitled to procedural due process before he may be required to register and before information may properly be publicly disclosed about him").  See also <u>Poe</u> v. <u>Sex Offender Registry Bd</u>., 456 Mass. 801, 813 (2010); <u>Doe, Sex Offender Registry Bd. No. 3844</u> v. <u>Sex Offender Registry Bd</u>., 447 Mass. 768, 775 (2006); <u>Doe, Sex Offender Registry Bd. No. 972</u>, <u>supra</u>; <u>Doe, Sex Offender Registry Bd. No. 27914</u> v. <u>Sex Offender Registry Bd</u>., 81

Mass. App. Ct. 610, 614 (2012). Furthermore, the plaintiffs' State law due process allegations are sufficient to survive the motion to dismiss, inasmuch as they allege that the plaintiffs did not receive notice or an opportunity to be heard before SORB republished their information. We leave the final resolution of this claim to further factual development.[12]

As to the remedies for any such State constitutional violations, declaratory and injunctive relief are potentially available. The Supreme Judicial Court has long held that a person may sue the responsible State officer, in his or her official capacity, to enjoin deprivations of one's State constitutional rights, and that no immunity prevents such a suit. See Lane v. Commonwealth, 401 Mass. 549, 552 (1988), citing Ex parte Young, 209 U.S. 123, 159-160 (1908) ("We can think of no basis for recognizing some form of governmental immunity that would prevent issuance of an injunction against an ongoing wrong committed systematically and intentionally by a governmental agency for the continuing benefit of the Commonwealth"); Commonwealth v. Norman, 249 Mass. 123, 130-131 (1924) ("A suit in equity to restrain a State officer from

---

[12] In their amended complaint, the plaintiffs also assert a substantive due process violation under the Massachusetts Declaration of Rights. However, the plaintiffs did not brief the Massachusetts law of substantive due process, and given our rulings on the State law claims we need not address the State substantive due process claim at this time.

executing an unconstitutional statute to the irreparable damage of the plaintiff's rights is not a suit against the State but against individuals acting outside the zone of their lawful authority and hence not protected by any immunity"). Accordingly, the individual defendants are properly sued in their official capacities for declaratory or injunctive relief under State law.

The plaintiffs' claim for damages for the alleged State constitutional due process violations stands on a different footing. One basis for a damages claim could be the Massachusetts Civil Rights Act, G. L. c. 12, §§ 11H, 11I, but that statute requires a plaintiff to allege and show a deprivation by "threats, intimidation or coercion." The amended complaint, however, does not contain such a claim.[13]

Instead, the amended complaint purports to assert its State constitutional claims directly under the Massachusetts Declaration of Rights, without reference to any statutory cause of action. No case, however, has yet recognized a claim for money damages, brought directly under the State Constitution against State officers for actions taken as State officers. We

---

[13] In response to our request for supplemental briefing, the plaintiffs argued that the defendants' alleged actions could qualify as threats, intimidation, or coercion under the Massachusetts Civil Rights Act. However, the plaintiffs have not alleged a cause of action under the Massachusetts Civil Rights Act, and thus this argument is unavailing.

decline to recognize one here.  The reason for this is soundly rooted in long-standing sovereign immunity law, which holds that the Commonwealth and its officers are generally immune from suits for damages for actions taken as State officers, unless the Legislature has acted expressly to abrogate that immunity. See Irwin v. Commonwealth, 465 Mass. 834, 840-841 (2013) ("Where the Commonwealth does choose to waive its sovereign immunity, it can be sued 'only in the manner and to the extent expressed [by the] statute'" [citation omitted]); Sullivan v. Chief Justice for Admin. & Mgt. of the Trial Court, 448 Mass. 15, 31 (2006) ("the Commonwealth cannot be sued unless there has been a waiver of its sovereign immunity");.  Here the Legislature has acted to abrogate sovereign immunity in suits for deprivations of constitutional rights, but only in part; as noted above, the damages remedy under the Massachusetts Civil Rights Act is only available upon proof of threats, intimidation, or coercion.  See Lecrenski Bros. v. Johnson, 312 F. Supp. 2d 117, 122 (D. Mass. 2004); Breault v. Chairman of the Bd. of Fire Comm'rs of Springfield, 401 Mass. 26, 36 (1987), cert. denied sub nom. Forastiere v. Breault, 485 U.S. 906 (1988).

In short, the Legislature has acted directly in this area, and has provided a damages remedy for some constitutional deprivations but not others.  The amended complaint attempts to circumvent this legislative scheme by stating claims directly

under the Massachusetts Declaration of Rights, but we are not willing to abrogate sovereign immunity by fashioning a judicial remedy where the Legislature did not. As we said in Martino v. Hogan, 37 Mass. App. Ct. 710, 720 (1994), we believe that the Civil Rights Act "occup[ies] the field" in this area. The plaintiffs cannot recover damages on their claims for deprivation of due process brought directly under the State Constitution.[14]

5. Mootness. Finally, while the defendants have asserted that the plaintiffs' claims are moot, that is incorrect. Plainly, there is a live controversy here. Indeed, the motion to dismiss did not even address four counts of the amended complaint.

What the defendants apparently mean to contend is that there is no longer a basis for declaratory or injunctive relief, because SORB took down the "moved out of state" page more than two years ago. The Superior Court judge rejected this argument. Among other things, he noted that the plaintiffs have an interest in pursuing a declaration that the defendants violated the law in posting the plaintiffs' information, as such a declaration might provide a remedy to address the collateral

---

[14] But cf. Layne v. Superintendent, Mass. Correctional Inst., Cedar Junction, 406 Mass. 156, 159-161 (1989) (discussing possible availability of damages relief under art. 114 of Amendments to Massachusetts Constitution).

consequences stemming from the defendants' conduct.  We discern no error or abuse of discretion in that determination.  The case is not moot, and the judge may take up the question of the appropriate declaratory or injunctive remedies, if any, as the case moves forward.  See LightLab Imaging, Inc. v. Axsun Techs., Inc., 469 Mass. 181, 194 (2014) ("Trial judges have broad discretion to grant or deny injunctive relief"); Boston Safe Deposit & Trust Co. v. Dean, 361 Mass. 244, 248 (1972) (trial judge has discretion to fashion appropriate declaratory relief);.

In sum, the plaintiffs' § 1983 claims for damages must be dismissed as to defendants Hayden and Lewis.  The damages claims brought directly under the Massachusetts Constitution also must be dismissed.  That part of the order denying the motion to dismiss the damages claims is accordingly reversed.  In all other respects, the order is affirmed.

So ordered.